IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEVIN W STEWART, | § | |
| *Plaintiff*, | § | 5-17-CV-00760-XR-RBF |
| vs. | § | |
| PATRICIA A SMITH, F.N.P.; REGINALD G SMITH, P.A.; AND ROBIN D. ELLERBEE, R.N.; | § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by Defendants Patricia A. Smith, Reginald G. Smith, and Robin Ellerbee. Dkt. No. 22. All pretrial matters in this § 1983 case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. Dkt. No. 5. The Court has federal question jurisdiction, *see* 28 U.S.C. § 1331, and the undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff Kevin Stewart is an inmate in state custody. He raises an Eighth Amendment claim in connection with Defendants' alleged conscious indifference to his need for medical treatment. At issue is whether Stewart's failure to administratively exhaust his claim via the prison's grievance process warrants the grant of summary judgment for Defendants. Stewart

contends that his failure to exhaust should be excused and that fact issues preclude a grant of summary judgment.

After considering Defendants' Motion, Dkt. No. 22, Stewart's Response, Dkt. No. 24, Defendants' Reply, Dkt. No. 25, Stewart's Sur-Reply, Dkt. No. 26, the case file, and the relevant law, the undersigned recommends that Defendants' Motion for Summary Judgment, Dkt. No. 22, be **DENIED**. Stewart points to evidence reflecting a genuine issue of material fact concerning whether the prison's grievance process was "available" to him such that summary judgment for Defendants for failure to administratively exhaust is not warranted. Accordingly, the undersigned recommends that the issue of exhaustion raised by Defendants' motion be handled as a threshold fact issue prior to trial, if timely requested, or, alternatively, at trial.

## I. Factual and Procedural Background

Stewart, a prisoner in the Jester Unit of the Texas Department of Criminal Justice Correctional Institutions Division ("TDCJ"), filed suit in Bexar County state court (the case has since been removed to federal court) against three TDCJ medical providers—Patricia A. Smith, FNP, Reginald G. Smith, P.A., and Robin D. Ellerbee—and several unnamed prison guards.[1] His pleadings allege that these defendants denied him access to medical treatment in violation of his Eighth Amendment rights.

Stewart's injuries stem from complications he experienced following a procedure to surgically pin his finger, which he underwent at the University of Texas Medical Branch at Galveston-Texas Department of Criminal Justice Hospital ("UTMB") on or about November 30,

---

[1] According to Stewart, these individuals who were employed at TDCJ's Garza West Transfer Facility and the Darrington Unit will be added to this lawsuit and served with process once identified. *See* Compl. ¶¶ 6-7. Any amendment naming these individuals, however, will need to comply with the governing statute of limitations. *See Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).

2016. Compl. ¶ 11. After the surgery, Stewart alleges, medical professionals discharged him with instructions to keep the splint and dressing clean and dry until a follow-up appointment scheduled for December 7, 2016. They also instructed him "to watch for signs of fever, chills, warmth, redness or drainage from [his] incision." *Id.* ¶ 12 (quotation marks omitted). These signs allegedly manifested on December 5, 2016. *Id.* ¶ 13. From December 5, 2016, until December 12, 2016, Stewart alleges, he repeatedly "begg[ed] [Defendants] for help and medical attention" but Defendants deliberately ignored his pleas. *Id.* ¶¶ 12-19.

On December 12, 2016, TDCJ medical staff finally saw Stewart and determined he needed an emergency transport to the nearest hospital. *Id.* ¶ 19. By the time he arrived the following day at UTMB, Stewart had gangrene, which required the amputation of his finger and a portion of his right, dominant hand. *Id.* ¶ 20. Following the amputation, Stewart further alleges, he was forced to endure follow-up skin-grafting procedures and has since been diagnosed with aggravated hearing loss and facial paralysis due to the infection, as well as post-traumatic stress disorder. *Id.*

On August 10, 2017, Defendants removed the case to this Court. Dkt. No. 1. A Scheduling Order has been entered and on March 20, 2018, Defendants filed the instant motion for summary judgment. Dkt. No. 22. This case is currently stayed at the parties' request, pending the Court's disposition of Defendants' Motion for Summary Judgment.

**II. Analysis**

The sole issue raised by Defendants' motion is whether Stewart's Eighth Amendment claim is barred due to his failure to administratively exhaust it through the prison grievance process. Stewart concedes he failed to exhaust the claim through the grievance process but argues the failure should be excused because the grievance process was unavailable to him. For

the reasons explained below, the undersigned finds a genuine issue of material fact concerning whether TDCJ's grievance process was available to Stewart. Defendants' motion should therefore be denied.

*The PLRA and Administrative Exhaustion*. The Prison Litigation Reform Act ("PLRA") applies here and provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.

42 U.S.C. § 1997e(a) (emphasis added). Exhaustion of available administrative remedies is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Even if a prisoner seeks relief not available through grievance proceedings, such as money damages, exhaustion is nonetheless typically a prerequisite to suit. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). The Fifth Circuit takes a "'strict' approach to § 1997e's exhaustion requirement[;] . . . prisoners must not just substantially comply with the prison's grievance procedures but instead must 'exhaust available remedies *properly*.'" *Wilson v. Epps*, 776 F.3d 296, 300 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)) (emphasis in original).

There are limits to the exhaustion requirement. For example, exhaustion is only required with respect to administrative remedies that are available. *Wheater v. Shaw*, 719 Fed. App'x 367, 369 (5th Cir. Feb. 7, 2018) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016)). "To determine what remedies are 'available' and thus must be exhausted, [courts] look to 'the applicable procedural rules . . . defined . . . by the prison grievance process itself.'" *Wilson*, 776 F.3d at 299 (quoting *Jones v. Brock*, 549 U.S. 199, 299 (2007)). In other words, "it is the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted."). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). And an administrative remedy is considered unavailable in situations where "officials are 'unable or consistently unwilling to provide any relief,' the administrative scheme is "'so opaque that it becomes, practically speaking, incapable of use' by the ordinary prisoner,'" or "'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation.'" *Wheater*, 719 Fed. App'x at 369 (quoting *Ross*, 136 S. Ct. at 1859-60); *see also Dillon*, 596 F.3d at 268 (noting, "our strict approach does not absolutely foreclose the possibility that prison officials' statements concerning administrative remedies can render such remedies unavailable").

The TDCJ requires a prisoner to pursue administrative remedies under a two-step grievance procedure. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004); *see also* TDCJ Offender Grievance Operations Manual ("TDCJ Manual") at 6.[2] Step 1 requires a prisoner to submit a grievance within 15 days after the complained-of incident. *Johnson*, 385 F.3d at 515; TDCJ Manual at 6. The warden then has 40 calendar days from receipt of the grievance to

---

[2] Portions of the TDCJ Manual may be found at Exs. C-F to Stewart's Response. "Because § 1997e 'requires that administrative remedies be exhausted before the filing of a § 1983 suit,' the relevant rules are those that governed [TDCJ's] grievance process at the time prior to the filing of [Stewart's] suit." *Wilson,* 776 F.3d at 299 (quoting *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998) *overruled by implication on other grounds by Jones*, 549 U.S. at 216. Although the TDCJ Manual is dated January 2012, Defendants do not appear to dispute that the rules set forth therein apply here. Accordingly, the undersigned will assume for purposes of this report and recommendation that these rules were in effect when Stewart submitted his grievances.

5

"investigate, respond, sign, and return the grievance to the offender." TDCJ Manual at 6;[3] *see also Wendell*, 162 F.3d at 891. After an adverse decision at Step 1, the prisoner has 10 days to file a Step 2 grievance. *Johnson*, 385 F.3d at 515; TDCJ Manual at 6; *Wendell*, 162 F.3d at 891. When submitting a Step 2 grievance, "[t]he completed I-128, Step 2 Grievance Form, along with the original 1-127, Step 1 Grievance Form shall be submitted to the unit grievance investigator." TDCJ Manual at 6.

"'[E]xhaustion is an affirmative defense,' and so "the burden is on [Defendants] to demonstrate that [Stewart] failed to exhaust available administrative remedies.'" *Cowart*, 837 F.3d at 451 (quoting *Dillon*, 596 F.3d at 266). Summary judgment on the issue of exhaustion is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Dillon* 596 F.3d at 266 (quoting Fed. R. Civ. P. 56(c)). At this stage, the evidence is viewed "in the light most favorable to the nonmoving party." *Id.* (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Id.* "[W]hile it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a)," in a given case and under a given set of circumstances "availability may sometimes turn on questions of fact." *Id.*

*The Evidence*. The parties offer differing versions of the facts surrounding Stewart's efforts to file grievances in the wake of his mid-December 2016 amputation. All agree Stewart did not submit a Step 2 grievance. Before discussing Step 2, however, we must examine the parties' differing views concerning what happened at Step 1.

---

[3] One extension of this deadline is permitted provided the offender is notified in writing of the extension. *See* Ex. TDCJ Manual at 11.

The parties dispute whether Stewart timely submitted a Step 1 grievance. According to TDCJ, the only grievance on file for Stewart for the time period from November 1, 2016, to the present is a single Step 1 grievance submitted on February 6, 2017. *See* Ex. A to Mot. Stewart, however, attests that the February 2017 grievance was his *third* Step 1 grievance relating to the events in question. He contends that on December 21, 2016, he placed two original Step 1 grievances—dated December 20 and 21, 2016—in the window for TDCJ UTMB staff. These grievances complained about Defendants' failure to provide him with necessary medical treatment. Stewart Aff. ¶¶ 6-7, 9. TDCJ nurses and staff had allegedly informed him that this was the procedure for grievance pick-up. *Id.* TDCJ, however, never provided Stewart with a grievance number, an outcome code, a response, or a decision for either of these two alleged grievances. *Id.* ¶ 13. Without a decision on either of his two December 2016 Step 1 grievances, Stewart maintains he was unable to move to Step 2. *Id.* ¶ 12. Accordingly, Stewart explains that he filed his February 2017 Step 1 grievance in an attempt to move forward and follow-up on his timely submitted December 20 and 21 Step 1 grievances. *Id.* ¶¶ 12-16; Drennan Aff. ¶ 8.

TDCJ unsuccessfully attempts to dismiss Stewart's affidavit as "conclusory," "self-serving," and, ultimately, "not enough to raise a fact issue." Repl. at 6. In the affidavit, Stewart details specific information he included in his December 20 and 21 grievances. He explains that he placed the grievances in the window, as instructed by TDCJ staff. Stewart Aff. ¶¶ 2-9. He also attests that he told a friend who had visited him at UTMB that he submitted these two Step 1 grievances, and that he provided her with copies of the grievance forms. *Id.* ¶ 10. These are not mere conclusory allegations, as Defendants contend.[4]

---

[4] *See, e.g., Lineberry v. United States*, No. CIV.A. 5:08CV72, 2009 WL 499763, at *13 (E.D. Tex. Feb. 27, 2009) (recognizing that "[a]s a general rule, an inmate who merely makes a speculative and conclusory assertion that filing a grievance would be futile has not satisfied the

The allegations in Stewart's affidavit are by definition "self-serving" but that alone is not sufficient reason to wholly discount them, as Defendants urge. *See C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed. App'x 439, 443 (5th Cir. Oct. 24, 2011) ("A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone."). The allegations are based on Stewart's personal knowledge and, hence, can qualify as competent summary judgment evidence. *See Williams v. Certain Individual Employees of Tex. Dep't of Criminal Justice*, No. CIV. A. H-08-0259, 2008 WL 4870981, at *3 (S.D. Tex. Oct. 30, 2008) ("The defendants' reliance on the absence of any grievance in their own records does not automatically entitle them to a judgment as a matter of law. Although Williams' affidavit is potentially self-serving, the affidavit is competent evidence that presents a triable issue regarding exhaustion of prison administrative remedies.").

What makes a difference here, moreover, is that in addition to Stewart's detailed, albeit self-serving, affidavit there are also several other pieces of evidence that corroborate Stewart's version of events.[5] First, Stewart's friend, Nancy Drennan, has provided an affidavit of her own confirming that Stewart told her during her December 24, 2016 visit that he placed the "original grievances in the window of his room for submission to TDCJ and that they were picked up by

---

exhaustion requirement of Section 1997e(a) but finding that plaintiff's "specific and detailed allegations" that he sought to file grievances but that the prison officials refused to give him any response were sufficient to reject defendants' failure-to-exhaust argument).

[5] *Cf. Howe v. Livingston*, No. 9:11CV162, 2012 WL 4127621, at *7 (E.D. Tex. Sept. 17, 2012) (holding prisoner's "vague and conclusory assertion that he filed grievances which 'disappeared or were never answered' did not excuse him from complying with the PLRA's exhaustion requirement and noting that such a finding is consistent with the summary judgment standard, which provides that "once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact . . . the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, *by unsubstantiated assertions*, or by only a scintilla of evidence") (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (emphasis added).

TDCJ personnel." Drennan Aff. ¶ 3. She has also provided copies of these two grievances, which she scanned and emailed to herself on January 4, 2017, "for electronic safekeeping." *Id.* ¶ 5; Exs. A & B to Drennan Aff. A copy of that email has been produced. Ex. J. to Resp. Drennan has also produced an email chain between her and TDCJ's Office of Professional Standards in which she complained that Stewart "has not been given due process" with respect to two grievances "written on 12/22/16 when he was at UTMB in Galveston regarding the gross neglect, denial of his request for medical attention and intentional malice and indifference directed toward him by the UTMB nursing staff at the Dominguez Unit on 12/6 and . . . while at the Garza West unit on 12/10." Drennan Aff. ¶ 9; Ex. K to Resp. Further, Stewart's February 2017 Step 1 grievance specifically references filing "numerous Step 1 Grievances star[ting] 12-20-16." Ex. H to Resp. He explains there that he is "unable to exercise any o[f] [his] 'due process rights,'" including by filing a Step 2 grievance "necessary to exhaust administrative remedies as required." *Id.*[6]

This evidence points to a genuine issue of material fact concerning whether Stewart timely submitted a Step 1 grievance complaining of the issues that form the basis of his claims. The TDCJ Manual also does not appear to address how a *hospitalized* prisoner should submit a grievance. *Cf.* TDCJ Manual at 3 ("Grievance staff will collect grievances each workday either from the grievance box or directly from the offender."). Accordingly, whether Stewart *properly* submitted his Step 1 grievances by placing them in the window of his hospital room also involves a disputed question of material fact. *See Wilson*, 776 F.3d at 300.

---

[6] The February 2017 grievance provided by Defendants does not contain the reference to "numerous Step 1 Grievances." *See* Ex. A to Mot. It appears that this sentence, which is located at the very top of the grievance, might have been cut off in the copying process. The grievance does, however, specifically reference Stewart's inability to exercise his due process rights by filing a Step 2 grievance.

We now must address Step 2 of the grievance process. Generally, "a prisoner must pursue a grievance through both steps for it to be considered exhausted," *Johnson*, 385 F.3d at 515, and Stewart admits that he never submitted a Step 2 grievance. But Stewart contends that he should be excused from this requirement because TDCJ requires that any Step 2 grievance include as an attachment the original Step 1 grievance, which here was never returned to Stewart. TDCJ's own procedures appear to support Stewart's contentions. *See* TDCJ Manual at 6 ("The completed I-128 Step 2 Grievance Form, along with the original 1-127, Step 1 Grievance Form, shall be submitted to the unit grievance investigator."); TDCJ Step 2 Offender Grievance Form[7] (providing, "*[y]ou must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed*") (emphasis in original). Stewart argues he "could not move forward with turning in a Step 2 grievance to complete the grievance process until [he] received a response to [his] original Step 1 grievances." *See* Stewart Aff. ¶ 12.

The Fifth Circuit has recognized that "under some circumstances, a prison's failure to respond to a prisoner's grievances can result in the prisoner's administrative remedies being deemed exhausted." *Wilson*, 776 F.3d at 301. The decision in *Wilson* is instructive. The plaintiff in *Wilson* was found to have failed to exhaust his administrative remedies because he did not move to the next step in the grievance process when the prison failed to timely respond. *Id*. The situation here differs from *Wilson* in at least one key respect: the prison's policy at issue in *Wilson* expressly permitted a prisoner to move on to the next step of the grievance process if the prison failed to timely respond to a grievance. *Id.* TDCJ's grievance policies here, in contrast, unequivocally required Stewart to submit his original Step 1 grievance with his Step 2 grievance.

---

[7] *See* Ex. E to Resp.

Without a decision on a timely-filed Step 1 grievance, there was no "'next step'" to which Stewart could advance. *See Cowart*, 837 F.3d at 452 (quoting *Wilson*, 776 F.3d at 301) (district court did not abuse its discretion in concluding plaintiff complied with exhaustion requirement where plaintiff did not appeal his grievance but prison's policy only permitted an appeal following the return of unsatisfactory findings).[8] Stewart has also pointed to evidence showing that his multiple attempts to follow-up on his December 20 and 21 Step 1 grievances went unanswered. *See* Stewart Aff. ¶¶ 12-16; *see also* Drennan Aff. ¶¶ 6-7; 9; Ex. K to Resp. Accordingly, the record reflects a genuine issue of material fact regarding whether TDCJ's grievance process was available to Stewart such that he might be excused from exhausting it.

Without an evidentiary hearing to resolve the disputed questions of fact addressed above, which neither party has requested, the Court cannot conclude, as a matter of law, that TDCJ is entitled to enjoy the benefits of a failure-to-exhaust affirmative defense. *See Dillon*, 596 F.3d at

---

[8] *See also Cantwell v. Sterling*, 788 F.3d 507, 509 n. 2 (5th Cir. 2015) ("The grievance procedures at issue in *Wilson* stated that if a prisoner does not receive a response to his grievance, the prisoner is 'entitled'—and therefore, to exhaust, *must*—'move on to the next step in the process.' By contrast, in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998), *overruled on other grounds as explained in Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012), we held that when a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures.") (internal citations omitted); *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable where prison procedure required prisoners to receive a response from the grievance officer before appealing to the warden); *Bell v. Mgmt. & Training Corp.*, No. 5:16-CV-39-DCB-MTP, 2017 WL 6060885, at *5 (S.D. Miss. Dec. 7, 2017) (denying motion for summary judgment filed by private operator of prison on issue of exhaustion where prisoner's complaint was rejected at the screening level and explaining that "[a]fter Bell's complaint was denied entry into the ARP [Administrative Remedy Program], he lacked an available administrative remedy". . . "[t]here was no "next step"); *Henderson v. Moore*, No. C-08-036, 2008 WL 2704674, at *5 (S.D. Tex. Jul. 2, 2008) (explaining that "even if it was necessary for plaintiff to file a Step 2 grievance, the uncontested facts establish that he could not have done so timely because he did not receive a copy of the Step 1 response" and holding that "[u]nder the particular circumstances of this case, the fact that plaintiff *never* received a copy of the Step 1 response excused any failure to exhaust") (emphasis in original)

272-73 (explaining how district courts should generally approach exhaustion questions under the PLRA).

### III. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment, Dkt. No. 22, be **DENIED**.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 17th day of August, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE